UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SUSAN BRESCIA,

                              Plaintiff,

               - against -

CEIL SIA, sued in her individual capacity, and
TOWN OF GREENBURGH.

                            Defendants.
------------------------------------------------------------x

05 Civ. 7948 (CLB)

***Memorandum and Order***

Brieant, J.

      Before the Court in this Employment Discrimination case is Defendant's motion for summary judgment (Doc. No. 9) filed June 16, 2006. Opposition and reply papers were filed and the motion was argued before the Court today.

      The following facts are undisputed or presumed true for purposes of this motion only. Plaintiff began work for the Town of Greenburgh as an Assistant Clerk of the Justice Court on March 22, 2004. Plaintiff's employment was subject to a one year probationary period. Defendant Ceil Sia served at all relevant times as Clerk of the Justice Court of the Town of Greenburgh, and was responsible for hiring and ultimately firing Plaintiff. *Oppo., Exh. 1 at 32-33*.

      In May of 2003, the New York State Office of Court Administration ("OCA") intervened and assumed temporary responsibility for the management of the Town's Justice Court. The Town Board retained Richard Santorsola to act as supervisor on behalf of the defendant Town.

1

During her employment, Plaintiff began to voice her concerns over what she perceived to be problems and mismanagement at the court.  She complained of things such as failures to seal youthful offender files, the dissemination of false information to the public in youthful offender cases that should have been sealed, the sending of notices to defendants to appear in court on misdemeanors years after the offense, failure to timely respond to requests for Certificates of Disposition, improper summonsing to court of defendants through improperly-issued arrest warrants and other matters Plaintiff considered to be of public concern.

In August 2004, Plaintiff became a shop steward, and she expressed to Defendant Sia concern over health and safety issues, including complaints about insects in the building and diesel fumes invading the court premises and making employees feel sick.  Plaintiff claims that Defendant Sia ignored her complaints.

Plaintiff was terminated March 8, 2005.  To no avail, she sought to have her termination reviewed and rescinded by the Town Board.  Plaintiff claims that she was terminated as punishment for her constitutionally protected speech and in violation of her right of association by virtue of her union leadership.

Defendants argue that Plaintiff was fired for legitimate reasons of insufficient performance, and assert that on approximately her fourth day of work, Plaintiff was confronted by the Assistant Court Administrator for reporting late to work on three out of her first four days on the job.  Defendants submitted an internal memo dated March 25, 2004 (Plaintiff's fourth day

2

of work), on which it was recorded that Plaintiff was confronted for wearing inappropriate clothing and for arriving late for work. *Exh. D.* On a handwritten memo dated May 19, 2004, Defendant Sia noted that she'd had another conversation with Plaintiff about her job performance and that she advised Plaintiff that she "would not tolerate her behavior anymore." *Exh. E.* Also submitted by Defendants are memos dated: May 24, 2005, regarding inappropriate attire (*see Exh. F*); November 18, 2004, regarding a conversation with another employee (Carmen Suave) complaining that Plaintiff didn't do sufficient work (Exh. G); January 5, 2005, regarding the Carmen Suave again complaining about Plaintiff; January 11, 2005, regarding a conversation with employee Marge Rizzi, who complained that Plaintiff didn't like her job and didn't do enough work; and February 5, 2005, from Defendant Sia, who recorded finding Plaintiff missing for about half an hour from work.

Defendants now move for summary judgment, arguing that: 1) Plaintiff's speech did not address matters of public concern; 2) Even if it arguably addressed matters of public concern, her motive was to further her own personal interests (and those of 4 or 5 coworkers); 3) there existed no causal connection between Plaintiff's speech and the decision to terminate her; 4) Plaintiff would have been terminated even in the absence of the speech; and 5) Defendant Sia is protected by qualified immunity.

The legal standard for the grant of summary judgment is well established. For the following reasons, the Court disagrees with Defendants that summary judgment should be granted to them.

While Plaintiff's complaints about insects and diesel fumes in the building might arguably fall within her duties as a shop steward, those complaints regarding inadequacies of the court's operations, such as its handling of youthful offender files or improperly-issued arrest warrants, are certainly matters of public concern.  Proper and responsible management of a Town Court is a crucial component to the maintenance of a safe community.  Addressing these issues would not personally benefit Plaintiff, but rather the public, which is, or would be affected adversely by the allegedly negligent or careless conduct.

The holding of *Garcetti v. Cebellos*, 2006 U.S. Lexis 4341 (2006), is inapplicable to the facts of this case.  In *Garcetti*, the Supreme Court held that the First Amendment did not prohibit managerial discipline based on the employee's expressions made pursuant to official responsibilities.  In this case, Plaintiff had no official responsibility to report on the operations of the court, and in speaking on these matters did so as a citizen.

Whether there exists a causal connection between Plaintiff's speech and her termination is a jury question.  Plaintiff argues that Sia never discussed with her the complaints allegedly made by her coworkers, and documented by Sia in internal memoranda.  She argues that although she was confronted for her attire and arriving a few minutes late to work, she never received any disciplinary letters or negative job performance reviews.  On the contrary, she asserts that she was commended as being one of the most competent people in the building, and was told that she had been promoted, when she was moved from her assignment of working at the public intake window with mail duties to working with the assistant court clerk.

By her fourth day on the job, Plaintiff was confronted for inappropriate dress and tardiness, and that complaints from other employees have apparently accrued since November 2004.  However, Plaintiff was not terminated until just shy of the end of her probationary period in May 2005.  Viewing the facts in the light most favorable to Plaintiff, as it must, the Court finds it as at least curious, if not dubious, that Plaintiff worked for almost the full year, during which she did not have civil service protection against termination, and was then apparently terminated rather abruptly. It certainly raises a material issue of fact as to the actual motive and intent behind the termination of Plaintiff, who had been speaking out about matters of public concern, relating to operation of the court.  A jury may or may not ultimately find that the termination was causally related to her complaints on matters of public concern.  In any event, it will be left to the jury to decide, on the basis of a plenary trial record, whether the reasons offered by Defendants were, or were not pretextual.

Defendants also argue that Defendant Sia is protected by qualified immunity because she is protected in the performance of her discretionary functions, when her conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  It is well known by now that an employee may not be terminated in retaliation for his or her protected speech.  Whether Plaintiff was fired for good cause or in retaliation for her speech on matters of public concern is a question of fact for the jury, going to actual motive, and the facts as to this question are closely intertwined with those discussed *supra*.  A jury will act within its traditional province to judge the strength and reliability of the witnesses' testimony at trial, and with the benefit of a plenary trial record, will decide whether Defendant's rationale for Plaintiff's

termination was or was not merely pretextual.

The Court declines at this time to strike Plaintiff's claim for punitive damages, and will rule on that matter with the benefit of a plenary trial record.

X

      X

                X

                     X

                        X

SO ORDERED.

Dated:  White Plains, New York
         September 22, 2006.                  _____
                                                              Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
       September 22, 2006.

*Charles Brieant* (signature)
Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
       September 22, 2006.

                                                  Charles L. Brieant, U.S.D.J.